## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| STEVEN HORNE, on behalf of himself and all others similarly situated | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| THE KRAFT HEINZ COMPANY | |
| Defendant. | |

Plaintiff, Steven Horne ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against the Kraft Heniz Company ("Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## <u>INTRODUCTION</u>

1.      This action aims to address the deceptive and misleading business practices of The Kraft Heinz Company regarding the manufacturing, marketing, and sale of its Turkey Bacon Products, both within the state of Florida and throughout the United States (hereinafter referred to as the "Products").

1

- 12-oz. vacuum-packed packages of "Oscar Mayer Turkey BACON ORIGINAL" and universal product code (UPC) "071871548601" printed on the packaging under the barcode, "use by" dates ranging "18 JUL 2025" to "02 AUG 2025," and lot code "RS40."

- 36-oz. packages containing three 12-oz. vacuum-packed packages of "Oscar Mayer Turkey BACON ORIGINAL" and universal product code (UPC) "071871548748" printed on the packaging under the barcode, "use by" dates ranging "23 JUL 2025" to "04 SEP 2025," and lot codes "RS19," "RS40," or "RS42."

- 48-oz. packages containing four 12-oz. vacuum-packed packages of "Oscar Mayer Turkey BACON ORIGINAL" and UPC "071871548793" printed on the packaging under the barcode and "use by" dates ranging "18 JUL 2025" to "04 SEP 2025," and lot codes "RS19," "RS40," or "RS42."

2.     The Defendant has inadequately and misleadingly labeled and marketed its Products to reasonable consumers, including the Plaintiff, by failing to disclose on the packaging that the Products may be contaminated with Listeria monocytogenes.

3.     As described in further detail below, the Products contain Listeria monocytogenes, a pathogen which may lead to serious and life-threatening adverse

health consequences.[1] The risk of severe infection poses significant concerns for pregnant individuals, infants, the elderly, and those with compromised immune systems. These populations are particularly vulnerable to serious complications and fatalities associated with Listeria monocytogenes.[2]

4.     Listeria monocytogenes is responsible for causing the infection Listeria. Foodborne listeriosis is one of the most dangerous and life-threatening foodborne diseases.[3] Individuals categorized within high-risk groups for Listeria include pregnant women, infants, the elderly, and those with compromised immune systems. These populations exhibit a heightened risk of developing severe symptoms, with a mortality rate ranging from 20% to 30%. Consequently, Listeria poses a significant public health concern that necessitates careful attention and preventive measures.[4]

5.     Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including *Listeria monocytogenes*.

---

[1] Listeriosis can cause fever, muscle aches, headache, stiff neck, confusion, loss of balance and convulsions sometimes preceded by diarrhea or other gastrointestinal symptoms. An invasive infection spreads beyond the gastrointestinal tract. In pregnant women, the infection can cause miscarriages, stillbirths, premature delivery or life-threatening infection of the newborn. In addition, serious and sometimes fatal infections in older adults and persons with weakened immune systems. *See*: https://www.fsis.usda.gov/recalls-alerts/kraft-heinz-foods-company-recalls-turkey-bacon-products-due-possible-listeria
[2] Id.
[3] https://www.who.int/news-room/fact-sheets/detail/listeriosis
[4] Id.

6.     The Plaintiff and those similarly situated (hereinafter referred to as "Class Members") rightfully anticipate that the meat products they purchase will be free from, or will not present a risk of containing, any knowingly harmful substances that could lead to severe illness or pose life-threatening risks.

7.     Unfortunately for consumers, the meat Products they purchased contain *Listeria monocytogenes*.

8.     The Defendant is engaged in a marketing and advertising campaign that fails to disclose on the packaging the presence of *Listeria monocytogenes* in the Products. The knowledge of *Listeria monocytogenes* is significant for reasonable consumers. This information regarding the presence of *Listeria monocytogenes* is exclusively within the Defendant's possession, and consumers would only be able to obtain it by sending the products to a laboratory for comprehensive testing. Such an omission may mislead a reasonable consumer into believing they are purchasing a product that does not contain a known bacterium, while in reality, they are acquiring a product that is contaminated with Listeria monocytogenes.

9.     *Listeria monocytogenes* is able to survive and even grow under refrigeration and other food preservation measures, making it a resilient and dangerous bacterium.[5] In fact, the bacteria are also able to survive freezing.[6]

---

[5] https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis
[6] https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269

10.    *Listeria monocytogenes* is associated with a range of serious infection-related complications, including but not limited to sepsis, meningitis, encephalitis, spontaneous abortion, and fever. Even individuals who are otherwise healthy may be susceptible to infection-related issues such as gastroenteritis.[7] Furthermore, infections caused by *Listeria monocytogenes* result in a hospitalization rate of approximately 95% and exhibit a high case fatality rate of 20%, underscoring the significant dangers posed by this pathogen.[8] Additionally, research has indicated that Listeriosis is linked to elevated mortality rates in the early post-recovery phase, further highlighting the challenges associated with the treatment of this infection, even when recovery occurs promptly.[9]

11.    A representative example of Defendant's lack of disclosure on the Products is depicted below:

---

[7] https://www.ncbi.nlm.nih.gov/books/NBK534838/
[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736668/
[9] https://link.springer.com/article/10.1007/s15010-022-01872-1





12.    Consumers like Plaintiff reasonably expect that food products sold by manufacturers such as Defendant are safe and free from harmful substances, including *Listeria monocytogenes*. Plaintiff and Class Members relied on this expectation when purchasing Defendant's Products, anticipating they would not

contain, or be at risk of containing, any known disease-causing agents. However, the Products purchased by Plaintiff were, in fact, contaminated—or at risk of contamination—with *Listeria monocytogenes*, a fact confirmed by Defendant's own recall and testing.

**Defendant's Recall is Insufficient**

13.    On July 2, 2025, U.S. Department of Agriculture, Food Safety and Inspection Services ("FSIS") issued an announcement that Defendant is recalling the Products.[10]  The alert included the following statement: "FSIS is concerned that some products may be in consumers' refrigerators or freezers. Consumers who have purchased these products are urged not to consume them. These products should be thrown away or returned to the place of purchase."[11]

14.    In a separate press release on July 4, 2025, Defendant provided the following statement: **"If you have one of the recalled packages, throw it out." You can also return it to the store where it was purchased for a refund, the Kraft Heinz spokesperson said."** [12]

15.    This recall was intentionally structured to prevent the majority of consumers from obtaining a refund.

---

[10] https://www.fsis.usda.gov/recalls-alerts/kraft-heinz-foods-company-recalls-turkey-bacon-products-due-possible-listeria
[11] Id.
[12] https://www.consumerreports.org/health/food-recalls/oscar-mayer-turkey-bacon-recalled-due-to-risk-of-listeria-a6107451821/

16.    Defendant knows that any consumer who was made aware of the recall would likely dispose of the Products. Defendant also knows that consumers frequently shop at various locations and may not consistently purchase the Products from the same retailer. Additionally, it is important to note that most consumers do not retain receipts and therefore would be unable to obtain a refund at the point of purchase for the recalled Products.

17.    Defendant's recall targets a limited number of individuals, ultimately benefiting only a select group of consumers who have purchased the Products.

18.    The class action remedy is superior to Defendant's inadequate recall effort.

19.    The marketing and advertising strategies employed by the Defendant include a critical aspect that influences consumer purchasing decisions: the product packaging and labels. Consequently, a reasonable consumer examining the Defendant's labels is likely to believe that they are acquiring products that are safe for oral consumption and devoid of harmful ingredients.

20.    Defendant's advertising and marketing campaign is false, deceptive, and misleading as the Products are known to contain, or pose a risk of containing, Listeria monocytogenes, a pathogen that poses significant threats to health and well-being. Furthermore, the Defendant fails to disclose or mention *Listeria monocytogenes* on the packaging or labeling of the Products.

8

21.    The Defendant's misrepresentations and omissions regarding the safety of the Products and their contents were material to the Plaintiff and Class Members. As a result, the Plaintiff and Class Members did not receive the full benefit of their transaction, receiving instead a food product contaminated with Listeria monocytogenes, which poses a risk to consumer health.

22.    The presence or potential presence of *Listeria monocytogenes* in the Defendant's Products renders them devoid of value. Moreover, it is evident that Defendant was able to command a significantly higher price for the Products due to this omission, as compared to the pricing that would have been applied had the risk of contamination been disclosed.

23.    Accordingly, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

24.    Defendant's conduct violated and continues to violate Fla. Stat. 501.201 et seq. (FDUPTA). Defendant also breached and continues to breach its warranties regarding the Products.

25.    Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

26.    Defendant manufactures, markets, advertises, and sells food products.

9

27.    Consumers have become more aware and vigilant regarding the impact of ingredients present in the food they consume. Companies, such as the Defendant, have strategically leveraged consumers' increasing demand for safe and nutritious food options. In fact, consumers are not only willing to pay a premium for such products but have actively done so.

28.    Consumers cannot effectively test for unsafe substances like *Listeria monocytogenes* at the point of sale, requiring them to rely on the Defendant to accurately disclose product contents on packaging or labels.

29.    Defendant is a large corporation with years of experience in producing, manufacturing, selling, and distributing food products, including the contaminated Products at issue.

30.    Defendant possesses specialized knowledge regarding the ingredients and raw materials utilized in the production of its Products. Defendant also possesses comprehensive expertise concerning the manufacturing processes involved in creating the Products. Additionally, the Defendant is acutely aware of the associated risks, including the potential for *Listeria monocytogenes* contamination. Moreover, the Defendant has the capacity to conduct testing for *Listeria monocytogenes* contamination prior to the distribution of the Products into the marketplace. Such specialized knowledge is exclusively held by the Defendant.

31.     Defendant has a duty to provide consumers with accurate information regarding the contents of the Products. Consequently, the Defendant's false, misleading, and deceptive omissions concerning the potential presence of *Listeria monocytogenes* in the Products are likely to persist in misleading and deceiving reasonable consumers and the general public.

32.     The misrepresentations and omissions made by the Defendant were both material and intentional, as consumers are concerned about the contents of the products they eat.   Individuals such as the Plaintiff and Class Members are influenced by marketing strategies, advertising campaigns, product labeling, and the listed ingredients.  The Defendant is aware that, had they disclosed the presence of *Listeria monocytogenes* or its potential contamination in the Products, neither the Plaintiff nor the Class Members would have purchased the Products, or, at the very least, they would not have been willing to pay the same premium price.

33.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

34.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant has caused injury to the Plaintiff and the Class Members in that:

a. they incurred financial expenditures for Products that did not align with the Defendant's representations;

b. Paid a premium price for Products that failed to meet the Defendant's claims;

c. Were deprived of the benefit of the bargain due to the Products purchased being inconsistent with the warranties provided by the Defendant;

d. Were denied the full value as the Products they purchased held less value than represented by Defendant; and

e. Were deprived of the benefits associated with the properties of the Products Defendant promised.

35. Had the Defendant not engaged in false, misleading, and deceptive representations and omissions, the Plaintiff and the Class Members would not have consented to pay the same prices for the Products they purchased, and/or the Plaintiff and the Class Members would not have been inclined to acquire the Products.

36. The Plaintiff and members of the Class purchased Products that were represented as free from Listeria monocytogenes. Given that these Products either do or may potentially contain Listeria monocytogenes, the value of the Products received by the Plaintiff and Class Members is substantially less than the value of the Products for which they paid.

37.    Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

38.    Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had the Plaintiff and Class Members been aware of the true nature of the Products—specifically, that they do or may potentially contain Listeria monocytogenes—they would not have agreed to purchase them at any price. At a minimum, they would have paid a lesser amount for the Products.

## JURISDICTION AND VENUE

39.    This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant. Plaintiff alleges that the total claims of individual members of the proposed Classes (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

40.    This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of Florida and purposefully availed itself, and continues to avail itself, of the jurisdiction of Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise

of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

41.    Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made his purchase of the Products in this district. His purchased Product was delivered to, and used, in this district.

## PARTIES

42.    Plaintiff Steven Horne is a resident and citizen of Brevard County, Florida. During the applicable statute of limitations period, Plaintiff purchased a 12-ounce package of Oscar Mayer Turkey BACON ORIGINAL for personal household use. Nowhere on the Products' packaging or webpage did Defendant disclose that the Products could present a risk of Listeria contamination.

Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products that Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive

14

misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

43.    Defendant The Kraft Heinz Company is a Delaware corporation, whose principal place of business is located in Chicago, Illinois. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

44.    Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

45.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

46.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of Florida at any time during the Class Period (the "Florida Subclass").

47.    The Class and Florida Subclass are referred to collectively throughout the Complaint as the Class.

48.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

49.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

50.    <u>Numerosity and Ascertainability</u>: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands and that members of the Class are numerous and geographically dispersed throughout Florida and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

51.    <u>Typicality and Adequacy</u>: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

52.    <u>Commonality</u>: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant committed the conduct alleged herein;

b. whether Defendant's conduct constitutes the violations of laws alleged herein;

c. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether Defendant knew or should have known that the representations were false or misleading;

e. whether Defendant's representations and non-disclosures concerning the Products are likely to deceive the consumer;

f. whether Plaintiff and the Class are entitled to a full refund, restitution, or other damages.

53.    <u>Predominance and Superiority</u>: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the

complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while

18

Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

54.    <u>Manageability</u>: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

55.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### COUNT I
### For Violations of Florida's Deceptive
### and Unfair Trade Practices Act,
### Fla. Stat. 501.201 et seq.
### (On Behalf of Plaintiff and Florida Subclass Members)

56.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

57.    Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition,

unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

58.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

59.    Defendant's failure to disclose that the Products have *Listeria monocytogenes* is misleading in a material way in that it induced Plaintiff and the Florida Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

60.    Plaintiff and the Florida Subclass Members have been injured as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the Florida Subclass Members received less than what they bargained and paid for.

61.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the Florida Subclass Members to buy Defendant's Products.

62.    The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Products were suitable for use.

63.    Plaintiff and Florida Subclass members relied upon these advertisements in deciding to purchase the Products.    Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

64.    Had Plaintiff known that the Products were not as advertised, he would not have purchased the product. As a result of Defendant's deceptive and unfair acts, Plaintiff and Florida Subclass members have been damaged.

65.    Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

66.    Plaintiff and Florida Subclass members are entitled to damages in an amount to be proven at trial.

## COUNT II
### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.
### (On Behalf of Plaintiff and the Nationwide Class)

67.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

68.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be of uniform quality and capable of functioning reliably.

69.    Defendant directly marketed the Products to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

70.    Defendant knew the Products attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

71.    The representations about the Products were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be of uniform quality and capable of functioning reliably.

72.    Defendant's representations affirmed and promised that the Product would be of uniform quality and capable of functioning reliably.

73.    Defendant described the Product so Plaintiff believed it would be of uniform quality and capable of functioning reliably, which became part of the basis of the bargain that it would conform to its affirmations and promises.

74.    Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Products.

75.    This duty is based on Defendant's outsized role in the market for this type of product, a leading seller of turkey bacon.

76.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

77.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

78.     Defendant is aware of these issues due to its recall of the Products.

79.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

80.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be of uniform quality, fit for consumption, and capable of functioning reliably.

81.     The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that it would be of uniform quality, color, and taste and capable of functioning reliably, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

**COUNT III**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class)**

82.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

83.    Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

84.    Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that Listeria-contaminated deli meats would cause injuries once exposed to humans and thus be worthless as a safe-to-consume turkey bacon.

85.    As a direct result of this breach, Plaintiff suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiff' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

86.    Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated deli meats containing Listeria would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous deli meats.

87.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT IV
## Unjust Enrichment
## (On Behalf of Plaintiff and the Nationwide Class)

88.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

89.    Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff' and Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

90.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

91.    As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendants bear the costs of any notice sent to the Class(es);

C. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendants to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding a full refund, restitution, and other appropriate equitable relief;

E. Granting an injunction against Defendants to enjoin them from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Ordering a jury trial and damages according to proof;

G. Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

H. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

I. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

J. Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: August 22, 2025

> s/*William C. Wright*
> WILLIAM WRIGHT
> The Wright Law Office, P.A.
> Florida Bar No. 138861
> willwright@wrightlawoffice.com
> Kelly Mata
> Florida Bar No. 1015921
> kellymata@wrightlawoffice.com
> 515 N. Flagler Drive, Suite 350
> West Palm Beach, FL 33401
> Telephone: (561) 514-0904