**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| STEVEN HORNE, on behalf of himself and all others similarly situated, | Case No. 6:25-cv-01630-CEM-DCI |
| Plaintiff, | The Honorable Carlos E. Mendoza |
| v. | |
| THE KRAFT HEINZ COMPANY, | |
| Defendant. | |

**DEFENDANT THE KRAFT HEINZ COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................2

BACKGROUND ....................................................................................4

I.     In July 2025, Kraft Heinz Voluntarily Recalled Specific Turkey Bacon Products Due to Potential Listeria Contamination. ..................4

II.    Plaintiff Alleges That He Suffered Economic Injury as a Result of Purchasing Turkey Bacon That May or May Not Contain Listeria. .....5

LEGAL STANDARD ...............................................................................8

ARGUMENT .........................................................................................9

I.     Plaintiff Lacks Standing Because He Has Not Plausibly Alleged That the Product He Bought *Actually* Contained Listeria...................9

II.    Plaintiff's Claims Are Prudentially Moot Because Kraft Heinz Already Offered Consumers a Full Refund. ........................................15

III.   Plaintiff's Individual Claims Fail for Independent Reasons...............18

        A.    Plaintiff's negligent misrepresentation claim fails because plaintiff does not allege a duty to disclose.............................18

        B.    Plaintiff fails to state plausible warranty-based claims. ........19

        C.    Plaintiff fails to state a viable unjust enrichment claim. .......22

IV.   Plaintiff Lacks Standing to Seek Injunctive Relief.............................23

CONCLUSION ....................................................................................24

Defendant The Kraft Heinz Company moves to dismiss Plaintiff's lawsuit for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Kraft Heinz seeks dismissal without leave to amend.

## INTRODUCTION

In July 2025, Kraft Heinz voluntarily recalled a limited number of Oscar Mayer turkey bacon products after routine monitoring (and subsequent product testing) indicated that some of those products were potentially contaminated with Listeria monocytogenes.  As the USDA noted on the website announcing the recall, there were "no confirmed reports of adverse reactions due to consumption of these products."  Ex. 1.  Kraft Heinz also agreed to provide a full refund to consumers who purchased a recalled product.  Instead of availing himself of a refund, Plaintiff filed this consumer class action against Kraft Heinz.  Plaintiff's lawsuit is meritless, and this Court should dismiss it.

Plaintiff does not allege that he became ill after consuming Oscar Mayer turkey bacon.  Nor does Plaintiff allege any facts suggesting that the turkey bacon he purchased *actually* contained Listeria; in fact, he does not even allege that the turkey bacon he purchased was subject to the recall at all.  Plaintiff tries to plead around these facts by alleging that he purchased products that "do or may potentially contain" Listeria.  Compl. ¶¶ 36–38.  But courts across the country—including in the Eleventh Circuit—agree that a plaintiff cannot state a product mislabeling claim premised on his purchase of an allegedly "contaminated"

product absent plausible allegations that the product he purchased was *actually* contaminated. Here too, Plaintiff's assertion that his turkey bacon "potentially" contained Listeria is woefully insufficient to establish that he purchased a "contaminated" product. He accordingly lacks standing to bring this lawsuit.

Even assuming that Plaintiff purchased a "contaminated" product (despite the absence of any plausible allegation saying as much), his claims are also prudentially moot in light of Kraft Heinz's voluntary recall. That recall, which Kraft Heinz initiated in coordination with the USDA's Food Safety & Inspection Service ("FSIS"), offered consumers who purchased a recalled product a full refund. Because that recall provided affected consumers all the relief they could obtain in this lawsuit, it mooted their claims for damages against Kraft Heinz.

Plaintiff's common-law claims suffer from other defects as well. Plaintiff's claim for negligent misrepresentation fails because the arms-length purchase of a consumer product (like Oscar Mayer turkey bacon) does not give rise to a duty to disclose. Similarly, Plaintiff's breach-of-warranty claims fail because he does not allege that he was in privity with Kraft Heinz or that he notified Kraft Heinz of its alleged breach of warranty before filing this lawsuit. And Plaintiff's unjust enrichment claim fails as well, both because he does not allege that he conferred a "direct benefit" on Kraft Heinz and because he does not allege facts suggesting that it would be unjust for Kraft Heinz to retain that purported benefit.

Finally, even if Plaintiff's complaint were otherwise plausible (which it is not), he lacks standing to seek injunctive relief. Leaving aside the fact that he

knows of the alleged omission, Plaintiff does not allege any facts suggesting that Oscar Mayer turkey bacon will continue to be "contaminated" in the future. As a result, Plaintiff cannot establish a likelihood of future "deception" and cannot seek an injunction—either on his own behalf or on behalf of the putative class.

## BACKGROUND

### I.    In July 2025, Kraft Heinz Voluntarily Recalled Specific Turkey Bacon Products Due to Potential Listeria Contamination.

Kraft Heinz manufactures Oscar Mayer turkey bacon. In 2025, Kraft Heinz discovered during routine product testing that some of those products may have been contaminated with Listeria. *See* Ex. 1 (FSIS recall website).[1] Although there had not been any reported incidents of consumers developing listeriosis or experiencing adverse health consequences, Kraft Heinz nonetheless elected to recall several lots of turkey bacon out of an abundance of caution. *See id.*

Kraft Heinz and the FSIS announced the recall on July 2, 2025. *See* Compl. ¶ 13 & n.10; Ex. 1. The recall announcement, which appears on the FSIS's website, makes clear that the recall covered specific turkey bacon products produced

---

[1] This Court can consider the FSIS webpage announcing the recall (which is attached as Exhibit 1) under the incorporation-by-reference doctrine because Plaintiff references it in his complaint. *See* Compl. ¶ 13 n.10; *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (noting that courts may "consider materials outside a complaint at the motion-to-dismiss stage" if they are subject to incorporation by reference or judicial notice). The FSIS page is independently subject to judicial notice because it is a "matter of public record" that is available on a "government website." *Kosowsky v. Icahn Enters. L.P.*, 748 F. Supp. 3d 1303, 1309 n.1 (S.D. Fla. 2024); *see also Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials.").

between April 24, 2025 and June 11, 2025.  *See* Ex. 1.  The recall announcement noted that the recall implicated three products: (1) 12-ounce packages of Oscar Mayer turkey bacon with the universal product code (UPC) 071871548601, "use by" dates between July 18, 2025 and August 2, 2025, and the lot code "RS40"; (2) 36-ounce packages of Oscar Mayer turkey bacon with the UPC 071871548748, "use by" dates ranging between July 23, 2025 and September 4, 2025, and lot codes "RS19," "RS40," and "RS42"; and (3) 48-ounce packages of Oscar Mayer turkey bacon with the UPC 071871548793, "use by" dates ranging between July 23, 2025 and September 4, 2025, and lot codes "RS19," "RS40," and "RS42."  *See id.*

Although there were no confirmed cases in which a consumer developed listeriosis (or any other illnesses) after consuming Oscar Mayer turkey bacon, Kraft Heinz agreed to refund consumers who had purchased recalled products.  *See* Compl. ¶ 14 & n.12; Ex. 2 (Consumer Reports article).[2]  A Kraft Heinz spokesperson advised that consumers could return a recalled product to the store where it was purchased for a refund.  *See* Ex. 2.

## II.    Plaintiff Alleges That He Suffered Economic Injury as a Result of Purchasing Turkey Bacon That May or May Not Contain Listeria.

On August 25, less than two months after Kraft Heinz initiated its voluntary recall, Plaintiff filed this putative class action against Kraft Heinz.  The crux of his

---

[2] Because Plaintiff cites a Consumer Reports article regarding the recall in his Complaint, this Court can consider the article (which is attached as Exhibit 2) in ruling on this motion to dismiss under the incorporation-by-reference doctrine. *See* Compl. ¶ 14 n.12; *Baker*, 67 F.4th at 1276.

lawsuit is that Kraft Heinz "misleadingly labeled and marketed its Products to reasonable consumers . . . by failing to disclose on the packaging that the Products *may be* contaminated with Listeria monocytogenes." Compl. ¶ 2 (emphasis added). He similarly alleges throughout the complaint that the products "do or *may potentially* contain Listeria monocytogenes." *Id.* ¶¶ 36, 38 (emphasis added); *see also id.* ¶ 22 ("The presence or *potential* presence of *Listeria monocytogenes* in the . . . Products renders them devoid of value.") (emphasis added).

Plaintiff alleges that he "purchased a 12-ounce package of Oscar Mayer Turkey BACON ORIGINAL for personal household use" at some point "[d]uring the applicable statute of limitations period." *Id.* ¶ 42. Notably, Plaintiff does not allege that the product he purchased was subject to the recall, that it included any of the "use by" dates or lot codes subject to the recall, or even that it was manufactured between April 24, 2025 and June 11, 2025. Instead, Plaintiff simply alleges that he purchased the product at some unspecified time "[d]uring the applicable statute of limitations period." *Id.* Nor does Plaintiff allege that the product he purchased *actually* contained Listeria monocytogenes. Instead, Plaintiff alleges that the "Products that Plaintiff received were worthless because they *possibly* contained Listeria monocytogenes." *Id.* (emphasis added).[3]

---

[3] Although Plaintiff alleges that the "*Products* that Plaintiff purchased were worthless," Plaintiff only identifies one product he allegedly purchased: a 12-ounce package of Oscar Mayer turkey bacon. Compl. ¶ 42 (emphasis added).

Although Plaintiff asserts that Listeria monocytogenes "is associated with a range of serious infection-related complications" (*id.* ¶ 10), he does not allege that he—or anyone else—developed listeriosis as a result of consuming the products. Instead, he alleges that he and other consumers suffered an economic injury because the "presence or potential presence of *Listeria monocytogenes* in the . . . Products renders them devoid of value." *Id.* ¶ 22; *see also id.* ¶ 42 ("The Products that Plaintiff received were worthless because they possibly contained Listeria monocytogenes."). Consistent with that theory of economic harm, Plaintiff alleges that he and other class members suffered "injury"—not because they became ill, but because they "incurred financial expenditures," "[p]aid a premium price," "[w]ere deprived of the benefit of the bargain," "[w]ere denied the full value [of] the Products," and "[w]ere deprived of the benefits associated with the properties of the Products Defendant promised." *Id.* ¶ 34.

Based on these allegations, Plaintiff asserts claims for: (1) violations of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA"); (2) breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and violations of the Magnuson Moss Warranty Act ("MMWA"); (3) negligent misrepresentation; and (4) unjust enrichment. *See* Compl. ¶¶ 56–91. Plaintiff purports to assert claims on behalf of a putative class of "all consumers who purchased the Products anywhere in the United States during the Class Period," as well as a putative "subclass of individuals who purchased the Products in the state of Florida at any time during the Class

Period."[4]  *Id.* ¶¶ 45–46.  In addition to a variety of monetary remedies, Plaintiff seeks "an injunction against Defendant[] to enjoin [it] from conducting [its] business through the unlawful, unfair and fraudulent acts or practices set forth herein."  *Id.* at 26 (Prayer for Relief).

## **LEGAL STANDARD**

A motion to dismiss for lack of Article III standing is governed by Federal Rule of Civil Procedure 12(b)(1).[5]  *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  At the pleading stage, Plaintiff "bears the burden of establishing" the elements of standing "by alleging facts that 'plausibly' demonstrate each element."  *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

A defendant may also move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facts indicating the "*mere possibility* of misconduct" fall short, and

---

[4] Plaintiff defines the term "Class Period" to mean "the applicable statute of limitations period."  Compl. ¶ 25.  It is not clear how Plaintiff could assert claims on behalf of *all* purchasers of Oscar Mayer turkey bacon during the applicable, multi-year statute of limitations period when the recall covered only specific products produced between April 24, 2025 and June 11, 2025 that have been removed from the market via the recall.  *See* Ex. 1.

[5] Unless noted, all citations and internal quotation marks are omitted.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79. Rather, the plaintiff must "allege more by way of factual content to nudg[e] his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683.

## ARGUMENT

### I.    Plaintiff Lacks Standing Because He Has Not Plausibly Alleged That the Product He Bought *Actually* Contained Listeria.

To have standing to sue in federal court, Article III requires a plaintiff to establish (among other things) that he or she has suffered an "injury in fact." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And for an injury to be "concrete," "it must actually exist." *Id.* at 340.

Here, Plaintiff's claims of injury hinge on his allegation that the turkey bacon he bought "*possibly* contained Listeria monocytogenes." Compl. ¶ 42 (emphasis added); *see also id.* ¶ 2 (alleging that Kraft Heinz fails "to disclose on the packaging that the Products *may be* contaminated with Listeria monocytogenes") (emphasis added); *id.* ¶¶ 36, 38 (alleging that the products "do or *may potentially contain* Listeria monocytogenes") (emphasis added). But allegations of *potential* contamination fall far short of plausible allegations of *actual* contamination, and

they accordingly fail to establish Article III standing.  *See Doss v. Gen. Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020) (per curiam).

In *Doss*, the plaintiff alleged that General Mills failed to "tell consumers that one of its products—Cheerios—contains glyphosate," which is an herbicide that the plaintiff described as a "probable human carcinogen."  *Id.* at 312–13.  The district court dismissed her lawsuit for lack of standing and found "that there is no allegation that the cereal she purchased even contains glyphosate, never mind harmful levels of it."  *Id.* at 313.  The Eleventh Circuit affirmed and found that the plaintiff had not plausibly alleged "that she purchased any boxes of Cheerios that contained *any* glyphosate, much less a level of glyphosate that is so harmful [that] the Cheerios are 'presumptively unsafe' and therefore worthless."  *Id.* at 314 (emphasis in original).  Absent any plausible allegation that the Cheerios she purchased *actually* contained glyphosate, the Eleventh Circuit found that she had pleaded only a "conjectural or hypothetical injury" and thus lacked standing.  *Id.*

Like the Eleventh Circuit, other courts agree that the mere "potential" of purchasing a "contaminated" product is insufficient to satisfy Article III's injury-in-fact requirement.  For example, in *In re Recalled Abbott Infant Formula Products Liability Litigation*, 97 F.4th 525 (7th Cir. 2024), Abbott voluntarily recalled infant formula produced at one of its manufacturing facilities following reports of bacterial contamination.  Several plaintiffs sued Abbott and alleged that they suffered economic harm by purchasing products that "were 'potentially'

contaminated with harmful bacteria." *Id.* at 528 (alteration omitted). The district court dismissed their lawsuit, and the Seventh Circuit affirmed.

In so holding, the Seventh Circuit found that the plaintiffs' alleged injuries were "not particularized" because the plaintiffs did not "plead facts suggesting that contamination of Abbott's products was sufficiently widespread to plausibly affect any given unit of infant formula, including the ones they purchased." *Id.* at 529. Instead, the court explained, "Plaintiffs claim only that there was a 'potential risk' the products may have been contaminated." *Id.* But absent any facts showing that the plaintiffs were "subject to that risk in a personal and individual way," the Seventh Circuit concluded that the plaintiffs had not alleged an injury in fact sufficient to establish Article III standing. *Id.*

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), is also on point. There, the plaintiffs alleged that they overpaid for Hebrew National hot dogs based on ConAgra's promise that the products were kosher, even though some Hebrew National hot dogs were allegedly not kosher. *See id.* at 1029–30. The court found that the plaintiffs lacked standing because their "allegations fail[ed] to show that any of the particular packages of Hebrew National beef they *personally* purchased contained non-kosher beef." *Id.* at 1030 (emphasis added).

In so holding, the court rejected the plaintiffs' assertion that "the non-kosher status of *some* packages of beef tainted *all* Hebrew National's products." *Id.* The court also noted that the plaintiffs offered "no reason to think that *all* the beef marked as kosher . . . did not meet kosher standards," and the court found that it

was "entirely possible, maybe plausible, that the packages of beef they personally purchased and consumed" were in fact kosher. *Id.* "Without any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect," the court found that "the consumers lack Article III standing to sue ConAgra." *Id.*

Most recently, in *Ward v. J.M. Smucker Co.*, 2025 WL 2613489 (6th Cir. Sept. 10, 2025), the Sixth Circuit affirmed the dismissal of a lawsuit premised on the purchase of "contaminated" peanut butter. The court noted that the lawsuit hinged on the "factual premise" that "Plaintiffs purchased peanut butter contaminated with salmonella." *Id.* at *2. The plaintiffs alleged that "the FDA identified sixteen cases of salmonella infection linked to peanut butter products produced at Smucker's facility in Lexington," that this "caused Smucker to recall over forty peanut butter product lines," and that "each named Plaintiff purchased peanut butter from these recalled product lines." *Id.* But the court found that these allegations did "not raise the reasonable inference that the contamination was sufficiently extensive to plausibly affect any given product." *Id.* at *3.

As the court explained, the plaintiffs did "not offer any allegations suggesting sufficiently widespread or extensive contamination, such as allegations regarding sampling, testing, or other pertinent data or information." *Id.* Nor did the plaintiffs "allege any facts regarding the specific peanut butter products they purchased, other than the fact that the products Plaintiffs purchased came from recalled product lines." *Id.* "Without additional allegations indicating the nature

or extent of the contamination," the court found that it could not "conclude that Plaintiffs have alleged facts sufficient to render plausible—and not merely *possible*—their bare assertion that they purchased contaminated products." *Id.*

Here too, Plaintiff's allegations do not plausibly suggest that the turkey bacon he purchased was *actually* contaminated with Listeria. He does not allege that he tested the product, that he became ill after consuming the product, or any other facts that suggest he purchased a "contaminated" product. Indeed, Plaintiff does not even allege that he purchased a product subject to the recall—even though he specifies the UPCs, "use by" dates, and lot codes that were subject to the recall. *See* Compl. ¶ 1. Rather, he alleges only that he "purchased a 12-ounce package of Oscar Mayer Turkey BACON ORIGINAL for personal household use" at some point "[d]uring the applicable statute of limitations period." *Id.* ¶ 42. One would expect that Plaintiff would have alleged that he purchased a recalled product if he did so. The only plausible inference that this Court can draw from Plaintiff's failure to allege that he purchased a recalled product is that he *did not do so*—which means there is no basis for Plaintiff's claim that he purchased a "contaminated" product.

Many courts have dismissed lawsuits premised on alleged "contamination" in recalled products when the plaintiffs did not allege that the products they purchased were *actually* subject to the recall. For example, in *Morrison v. Family Dollar Stores, LLC*, a Florida district court dismissed a lawsuit premised on the purchase of allegedly "adulterated" products that were subject to a recall when the plaintiffs "merely allege[d] that they purchased [the] products during the Class

Period, without alleging facts showing that they purchased the products during the relevant recall period, much less from the affected stores or in the affected states." 2025 WL 1368839, at *7 (S.D. Fla. May 5, 2025).  Similarly, in *Bell v. Greenbrier International, Inc.*, a New York federal court dismissed a lawsuit premised on alleged lead contamination in recalled lots of cinnamon when the plaintiff not only failed to "allege any facts tending to show that the single jar of cinnamon she purchased had elevated levels of lead," but also failed to "allege that the jar she purchased was from one of the lots included in the . . . Defendants' recall."  2024 WL 4893270, at *3 (S.D.N.Y. Nov. 26, 2024).  Here too, Plaintiff's failure to allege that the turkey bacon he purchased was *actually* subject to the recall defeats his claim that he bought a "contaminated" product.

But even if one looks past Plaintiff's failure to allege that he purchased a recalled product, his allegations establish only a "potential risk of contamination" that is insufficient to satisfy Article III.  *Abbott*, 97 F.4th at 530.  At no point in his complaint does Plaintiff allege that the turkey bacon he purchased contained Listeria.  Plaintiff alleges only that Kraft Heinz "fails to disclose on the packaging that the Products *may be* contaminated with Listeria monocytogenes."  Compl. ¶¶ 1–2 (emphasis added).  The rest of his complaint is replete with similar allegations that the products "*possibly* contained Listeria monocytogenes" and that they "do or *may potentially* contain Listeria monocytogenes."  *Id.* ¶¶ 36, 38, 42 (emphasis added).  But the hypothetical possibility that Plaintiff purchased a product that

*actually* contained Listeria is a "conjectural or hypothetical injury," rather than an injury in fact. *Doss*, 816 F. App'x at 314.

If Plaintiff's product did not contain Listeria, Plaintiff cannot articulate any way in which he suffered a cognizable injury. He would have received exactly what Kraft Heinz promised: safe and nutritious turkey bacon. Absent any plausible allegation that Plaintiff purchased a product that contained Listeria or that Listeria contamination "was sufficiently widespread to plausibly affect any given unit" of Oscar Mayer turkey bacon, Plaintiff has not plausibly alleged an injury-in-fact and thus lacks Article III standing. *Abbott*, 97 F.4th at 529.[6]

## II.    Plaintiff's Claims Are Prudentially Moot Because Kraft Heinz Already Offered Consumers a Full Refund.

Leaving aside his lack of Article III standing, Plaintiff's claims also fail because Kraft Heinz, working under the supervision of the FSIS, offered a full refund to consumers who purchased products subject to the recall. *See* Compl. ¶¶ 13–14. That recall provided all the relief Plaintiff seeks on behalf of putative class members and renders Plaintiff's lawsuit prudentially moot.

---

[6] Plaintiff's failure to plead an injury-in-fact also defeats his FDUTPA claim. To state a claim under FDUTPA, a plaintiff must plead: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097–98 (11th Cir. 2021). "Actual damages under FDUTPA are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Id.* at 1098. Absent any plausible allegation that his product was "contaminated," Plaintiff cannot show that there was any difference between the condition in which the turkey bacon was delivered and the condition in which it should have been delivered. *Id.*

"The prudential mootness doctrine allows courts to withhold requested relief when a once-live controversy becomes 'so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand.'" *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1377 (N.D. Ga. 2023) (quoting *Ingaseosas Int'l Co. v. Aconagua Investing, Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012)) (alteration in original). As now-Justice Gorsuch explained, the prudential mootness doctrine often applies when "a coordinate branch of government steps in to promise the relief [the plaintiff] seeks" in his lawsuit. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). "[O]nce the plaintiff has a remedial promise from a coordinate branch in hand," courts "generally decline to offer the promise of a judicial remedy to the heap." *Id.* That reasoning applies here too.

It is undisputed that Kraft Heinz offered consumers refunds for Oscar Mayer turkey bacon purchases involving packages that were *potentially* affected by listeria contamination—even if those consumers could not establish the product they purchased was *actually* contaminated. In other words, Kraft Heinz "has subjected itself to the continuing oversight" of the FSIS and stands ready to refund individuals who allegedly suffered economic injury from their purchase of the products. *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *3 (E.D. Mich. Mar. 22, 2023) (holding that a lawsuit involving allegedly defective vehicle engines was prudentially moot because the defendant "offered to repair the vehicles at issue and reimburse owners who ha[d] already paid for repairs"); *see also Ward-Richardson*, 690 F. Supp. 3d at 1377–80 (holding that a lawsuit involving allegedly

16

defective vehicle components was prudentially moot where recall "provide[d] Plaintiffs with 'precisely the relief' they [sought] through the" complaint); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 463–68 (E.D. Mich. 2022) (holding that a lawsuit involving allegedly defective vehicle engines was prudentially moot when NHTSA had initiated a recall of those vehicles).

Plaintiff alleges that "[t]his recall was intentionally structured to prevent the majority of consumers from obtaining a refund." Compl. ¶ 15. He claims that Kraft Heinz purportedly "knows that any consumer who was made aware of the recall would likely dispose of the Products," "that consumers frequently shop at various locations and may not consistently purchase the Products from the same retailer," and that "most consumers do not retain receipts and therefore would be unable to obtain a refund at the point of purchase for the recalled Products." *Id.* ¶ 16. But these generalized allegations are unavailing because they do not establish that Plaintiff—or any of the class members he purports to represent—has been "left without a complete remedy." *Pacheco*, 2023 WL 2603937, at *4.

Moreover, limitations on the relief provided via a government-supervised recall "do[] not counsel against a finding of prudential mootness." *Id.* As Justice Gorsuch explained in *Winzler*, "differences between the remedial process a coordinate branch has selected and those we might choose" are not sufficient to defeat a finding of prudential mootness. 681 F.3d at 1214. And despite Plaintiff's quibbles about the adequacy of the recall, allowing his claims to proceed would present the opposite problem, as it would afford Plaintiff and any members of the

17

putative class a "double-recovery windfall." *Sater v. Chrysler Grp., LLC.*, 2016 WL 7377126, at *7 (C.D. Cal. Oct. 25, 2016). Because Kraft Heinz's recall provides all the relief this lawsuit seeks, Plaintiff's claims are prudentially moot.

### III.    Plaintiff's Individual Claims Fail for Independent Reasons.

Even if the Court declined to dismiss this lawsuit based on lack of standing or prudential mootness, Plaintiff's claims for negligent misrepresentation, breach of warranty, and unjust enrichment all fail for independent reasons.

#### A.    Plaintiff's negligent misrepresentation claim fails because plaintiff does not allege a duty to disclose.

Under Florida law, omissions are not actionable as misrepresentations absent a duty to disclose. *See Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1322 (S.D. Fla. 2016) ("[T]he failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information."); *N. Am. Elite Ins. Co. v. Sw. Transp. Servs., Ltd*, 2014 WL 12452457, at *3 (S.D. Fla. Oct. 7, 2014) ("[O]missions of fact are not actionable as negligent misrepresentations 'unless the party omitting the information owes a duty of disclosure to the complainant.'") (citation omitted). "A duty to disclose arises when one party has information that the other party has a right to know because of a fiduciary or other relation of confidence between them." *N. Am. Elite Ins. Co.*, 2014 WL 12452457, at *3. That duty typically does not arise in an arms-length transaction, such as the sale of consumer packaged goods. *See id.*

Plaintiff's negligent misrepresentation claim fails because he does not allege that he and Kraft Heinz had a fiduciary relationship or relationship of confidence. Instead, Plaintiff alleges that Kraft Heinz "had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Products" "based on [Kraft Heinz's] outsized role in the market for this type of product, a leading seller of turkey bacon." Compl. ¶¶ 74–75. But under Florida law, there is no duty to disclose in these circumstances. *See Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *7 (M.D. Fla. July 20, 2023) (finding that a consumer did not have a "fiduciary-like relationship" with defendant sufficient to create a duty to disclose necessary to state a negligent misrepresentation claim). Absent a duty to disclose, Plaintiff cannot state a claim for negligent misrepresentation.

**B.    Plaintiff fails to state plausible warranty-based claims.**

Plaintiff has not adequately pleaded any of his breach-of-warranty claims because he (1) was not in privity with Kraft Heinz and (2) does not plausibly allege that he provided notice to Kraft Heinz before bringing this lawsuit.

"In Florida, warranty-based claims require privity of contract between the parties." *Inouye v. Adidas Am., Inc.*, 2023 WL 2351654, at *7 (M.D. Fla. Mar. 3, 2023); *see also Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) ("[T]o recover for a breach of warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."). Some courts have recognized an exception to this requirement for purchasers from a third party if "'substantial direct contacts' existed between the plaintiff and the manufacturer." *Inouye*, 2023

WL 2351654, at *7.  But "labeling and advertising" that is not directed at a specific individual consumer "does not satisfy the 'substantial direct contacts' exception." *Id.* at *8 (collecting cases).

Plaintiff's conclusory allegations of "contacts" with Kraft Heinz do not come close to satisfying the direct contacts exception.  Plaintiff alleges that Kraft Heinz "directly marketed the Products to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising."  Compl. ¶ 69. He further alleges that Kraft Heinz "knew the Product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires."  *Id.* ¶ 70.  But Plaintiff does not allege any specific "advertisement," "marketing," "media," "print circulars," "direct mail," or "targeted digital advertising" that would make his allegation plausible.

Indeed, another judge in this District has already held that virtually identical allegations of "untargeted marketing"—including allegations that the defendant "directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising" and "'developed its marketing and labeling to directly meet [the] needs and desires' of potential customers"—did not establish the "substantial direct contacts" necessary to override the privity requirement.  *Inouye*, 2023 WL 2351654, at *8 (alteration in original).  That is fatal to Plaintiff's breach-of-warranty claims.

Plaintiff's breach-of-warranty claims independently fail for lack of pre-suit notice. *See Cummings v. Blue Diamond Growers*, 2023 WL 3487005, at *4 (N.D. Fla. May 15, 2023) ("Florida law mandates that a buyer, after discovering a breach of warranty, must notify the seller 'within a reasonable time' thereafter.") (quoting Fla. Stat. § 672.607). "Notice given after a plaintiff files a lawsuit . . . does not suffice," as "the whole point of the notice requirement is to allow a defendant to cure the defect and thus to make good its warranty without a lawsuit." *Lamb v. Graco Children's Prods., Inc.*, 2012 WL 12874903, at *1–2 (N.D. Fla. Apr. 18, 2012). Plaintiff alleges that he "provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' warranties." Compl. ¶ 77. But this boilerplate allegation does not establish that Plaintiff provided notice to Kraft Heinz *before* filing this lawsuit, as Florida law requires. *See Cummings*, 2023 WL 3487005, at *5 (dismissing warranty claims for failure to provide pre-suit notice where the plaintiff alleged he provided notice by filing the lawsuit).

Finally, because "a MMWA claim requires a valid breach-of-warranty claim" under state law, Plaintiff's inability to state a breach-of-warranty claim also dooms her MMWA claim. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1141, 1173 (S.D. Fla. 2020) (citations omitted); *see also Morris v. Walmart Inc.*, 2020 WL 470287, at *5 (N.D. Ala. Jan. 29, 2020) ("A claim under the MMWA may only proceed if a plaintiff has a companion state-law claim."). This Court should dismiss all of Plaintiff's warranty-based claims.

### C.    Plaintiff fails to state a viable unjust enrichment claim.

To state an unjust enrichment claim under Florida law, Plaintiff must allege that: (1) he conferred a direct benefit on Kraft Heinz; (2) Kraft Heinz voluntarily accepted and retained that benefit; and (3) it would be inequitable for Kraft Heinz to retain that benefit. *See Marrache*, 17 F.4th at 1101.  Plaintiff does not plausibly allege the first and third elements.

Plaintiff does not plausibly allege that he conferred a direct benefit on Kraft Heinz, as he does not allege that he purchased the product directly from Kraft Heinz.  *See id.* at 1102 (dismissing unjust enrichment claim where plaintiff and class members "purchased bottles of Bombay from Winn-Dixie, not Bacardi," reasoning that "[a]t most, [plaintiff] ha[d] alleged that he and the other class members conferred an indirect benefit to Bacardi and, as such, cannot satisfy the first element of an unjust enrichment claim against Bacardi"); *Cummings*, 2023 WL 3487005, at *7 (dismissing unjust enrichment claim because plaintiff did "not allege that he bought the almonds from Blue Diamond directly").  And while Plaintiff refers generally to the "economic benefits conferred on Defendant" (Compl. ¶ 89), he never alleges that he *personally* conferred a direct benefit on Kraft Heinz.  That is independently fatal to his unjust enrichment claim.

Even if Plaintiff could plausibly establish the direct benefit requirement, Plaintiff's unjust enrichment claim fails because he does not plausibly allege that "it would be inequitable" for Kraft Heinz to retain the benefit.  *Marrache*, 17 F.4th at 1101–02.  Like all of his claims, Plaintiff's unjust enrichment claim rests on the

premise that he purchased a product that contained, or was at risk of containing, Listeria. But absent any plausible allegation that the product he purchased *actually* contained listeria, Plaintiff "in fact receive[d] what [he] bargained for," which forecloses any claim that Kraft Heinz would be unjustly enriched if it retained the money Plaintiff allegedly paid. *Id.* at 1102; *see also Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1135 (S.D. Fla. 2021) (dismissing unjust enrichment claim and finding plaintiff had not alleged "facts demonstrating that the circumstances render it inequitable for Defendant to retain any benefit Plaintiff has conferred on it" where plaintiff had "not adequately alleged any deceptive act"). Absent any plausible allegation that he bought a "contaminated" product, Plaintiff's unjust enrichment claim fails.

## IV. Plaintiff Lacks Standing to Seek Injunctive Relief

Finally, even if his claims were sufficiently plausible to survive dismissal (which they are not), and even if he had standing to pursue his claims generally (which he does not), Plaintiff lacks standing to seek injunctive relief specifically.

In the Eleventh Circuit, a plaintiff must allege "more than past deception" to seek injunctive relief in a false advertising case. *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 471 (S.D. Fla. 2018). Rather, to have standing to pursue injunctive relief, Plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *McGee v. Solicitor Gen. of Richmond Cnty.*, 727 F.3d 1322, 1325 (11th Cir. 2013). When a plaintiff "actually know[s] the truth underlying that labeling and thus cannot be deceived by it in the future," he

lacks standing to seek injunctive relief. *Wasser*, 329 F.R.D. at 471 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)).

That principle is fatal to Plaintiff's request for injunctive relief. Plaintiff alleges that, had he known of Kraft Heinz's alleged deception, he "would not have been willing to purchase the Products or pay as much for the Products." Compl. ¶ 42. But because the recall covered only products manufactured between April 24, 2025 and June 11, 2025 (*see* Ex. 1), Plaintiff cannot establish a likelihood that any turkey bacon he buys in the future will be "contaminated." Even if the alleged contamination *were* ongoing, which it is not, Plaintiff's lawsuit shows that he is now aware (or at least believes) that the products may contain Listeria.

Because Plaintiff now "actually know[s] the truth underlying that labeling," and because he does not allege that the products continue to be contaminated with listeria, he "cannot be deceived by [the labeling] in the future" and accordingly lacks standing to seek injunctive relief. *Wasser*, 329 F.R.D. at 471; *see also Piescik*, 576 F. Supp. 3d at 1131 (holding that the plaintiff lacked standing to seek injunctive relief against manufacturer of hand sanitizer where he was "acutely aware" of the defendant's alleged misrepresentations). This Court should therefore dismiss Plaintiff's claims to the extent they seek injunctive relief.

## CONCLUSION

This Court should dismiss Plaintiff's lawsuit without leave to amend.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Kraft Heinz certifies that they conferred with counsel for Plaintiff on October 31, 2025 via telephone, and counsel for the parties could not agree on resolution of any part of the motion.

<table>
<tr><td>

_s/Joshua C. Webb_

Joshua C. Webb (FBN 51679)
josh.webb@hwhlaw.com
Hill Ward & Henderson, P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Telephone:  (813) 221-3900
Facsimile:  (813) 221-2900

</td><td>

_s/Alexander M. Smith_

Dean N. Panos (_pro hac vice_)
dpanos@jenner.com
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654-3456
Telephone:  (312) 923-2765
Facsimile:  (312) 527-0484

Alexander M. Smith (_pro hac vice_)
asmith@jenner.com
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  (213) 239-2262
Facsimile:  (213) 239-5199

</td></tr>
</table>

25